IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENLO LOGISTICS, INC., | |
| Plaintiff, | No. C 03-CV-02560 JSW |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| GAINEY TRANSPORTATION SERVICES, INC., | |
| Defendant. | |

## I. INTRODUCTION

This matter comes before the Court upon consideration of Plaintiff Menlo Logistics, Inc.'s ("Menlo") Motion for Summary Judgment against Defendant Gainey Transportation Services, Inc. ("Gainey"). Menlo moves for summary judgment on its sole cause of action for breach of contract. Having considered the parties' pleadings, the evidence supporting their positions, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART Menlo's motion.

## II. FACTUAL SUMMARY

The following facts are undisputed. On November 6, 1996, Menlo and Gainey entered into a written agreement entitled "Master Broker/Motor Carrier Agreement (TL)" (hereinafter the "Master Agreement"). (*See* Complaint, ¶ 7; Answer ¶ 7). On May 31, 2002, Menlo and Gainey entered into an addendum entitled "Addendum to Master Broker/Motor Carrier Agreement (TL)" (hereinafter the

"HP Addendum").[1] (*Id.*)[2] The Court shall refer to these two agreements collectively as the "Agreement."

The terms of the Master Agreement contain detailed provisions regarding the type of insurance Gainey was to obtain and maintain. It includes a requirement that Gainey maintain "'Occurrence' based cargo insurance with limits of liability not less than $150,000 per vehicle and for each occurrence or in such greater amount as may be required by regulatory bodies having jurisdiction ... ." (Master Agreement, § 5.a.(1).)

The Master Agreement also contains detailed provisions regarding Gainey's liability for loss. (*Id.*, § 7.) It also provides that the Master Agreement "may not be released, discharged, abandoned, *changed, or modified in any manner except by an instrument in writing* signed on behalf of each of the parties hereto by their duly authorized representatives." (*Id.*, § 27 (emphasis added).) The Master Agreement also contains an integration clause that provides "[t]his contract constitutes the entire agreement between the parties, and may be modified only by mutual agreement of the parties *as evidenced in writing*. The parties agree that this Agreement is the product of negotiation and that neither party will be deemed the drafter thereof." (*Id.*, § 30 (emphasis added).)

The preface to the HP Addendum provides that it "is made a part of the" Master Agreement, and that to the extent any provisions of the HP Addendum conflict with the Master Agreement, the HP Addendum supersedes and controls such provisions. (HP Addendum at 1.) Like the Master Agreement, the HP Addendum contains specific provisions governing Gainey's liability for loss, damage, or injury to HP products transported by Gainey. (*Id.*, § 5.0.B.)

---

[1] Menlo requested that the Court take judicial notice of Gainey's Answer, and, in particular, the admission in the Answer that the parties entered into the Master Agreement and the HP Addendum. Gainey, in turn, requested that the Court take judicial notice of Menlo's complaint, and, in particular, Menlo's allegation that the parties entered into the Master Agreement and the HP Addendum. Each party's request for judicial notice is GRANTED.

[2] The Master Agreement and the HP Addendum thereto are attached as Exhibits A and B, respectively, to the Declaration of Michael J.M. Brook In Support of Plaintiff Menlo Logistics, Inc.'s Memorandum of Points and Authorities in Support of Motion for Summary Judgment/Summary Adjudication ("Brook Decl."). Gainey has also submitted these documents as Exhibits A and G, respectively, to the Declaration of Kevin A. Rynbrandt, Esq. In Support of Defendant Gainey Transportation Services, Inc.'s Brief In Support of Opposition to Plaintiff Menlo Logistics, Inc.'s Motion for Summary Judgment ("Rynbrandt Decl.").

1    Pursuant to the HP Addendum, subject to certain limitations, Gainey assumed full
2 responsibility for any loss and agreed that it "shall be liable to Menlo and HP for loss, damage, or
3 injury to HP Products from the time such products are transferred to Carrier until Carrier delivers such
4 products to their final destination." (*Id.* and §§ 5.0.B.i - 5.0.B.iv.) One such limitation on Gainey's
5 liability is that Gainey "shall not be responsible for loss or damage arising out of or resulting from: 1)
6 the sole negligence or willful misconduct of Menlo and/or HP or its customer or vendor or their
7 respective employees, agents or representatives ... ." (*Id.*, § 5.0.B.iv.).

8    On or about November 22, 2002, pursuant to the Agreement, Gainey picked up for delivery
9 to Grand Rapids, Michigan, a shipment of HP inkjet cartridges from HP's Sandston, Virginia facility
10 (the "HP cargo"). (Gainey Response to Request for Admission No. 7; Deposition of Cecil Hall ("Hall
11 Depo.") at 14:14-18, Ex. 1.)[3] When Mr. Hall picked up the HP cargo, he was given and
12 acknowledged receiving a document that including the following language:

> **ATTENTION DRIVERS!  UP TO $10,000 REWARD FOR INFORMATION LEADING TO ARREST AND CONVICTION OF CARGO THIEVES**
> INDIVIDUALS MAY FOLLOW YOU AND WILL STEAL YOUR ENTIRE TRUCK IF LEFT UNATTENDED AND UNSECURED.
> ...
> FOLLOW RECOMMENDATIONS BELOW & YOUR COMPANY'S SECURITY GUIDELINES FOR HAULING HIGH-VALUED FREIGHT.

18 (Brook Decl., Ex. D.)

19    Because the truck could not pull the load in question through mountains in West Virginia, Mr.
20 Hall took an alternate route to Grand Rapids, and passed through Mebane, North Carolina. (Hall
21 Depo. 14:19-21, 15:16-17:1.) After three to five hours, Mr. Hall stopped at a truck stop to take a
22 shower. While he was away from the truck, it and the HP cargo were stolen. (Hall Depo. 17:2-3,
23 17:17-19, 20:10-14.) Although Mr. Hall locked the truck, he left a set of keys to the truck in the
24 interior of the cab while he was in the shower. (Hall Depo. at 27:2-21.)

25    The HP cargo was never recovered, and HP filed a claim with Menlo, which Menlo paid.
26 (Declaration of Joseph W. Schuler ¶¶ 2-4, Exs. 1-3.) Menlo, in turn, filed a claim with Gainey in the
27 amount of $422,400.00. Gainey has not paid this claim.

---

[3]    Attached as Exhibits G and C, respectively, to the Brook Declaration.

*United States District Court*
*For the Northern District of California*

The parties dispute the following facts. Gainey contends that prior to and as a condition of entering into the HP Addendum, Menlo made it two oral promises: (1) that Gainey's liability for cargo loss would be limited to the amount of Gainey's insurance coverage, which Gainey contends was $100,000.00; and (2) that Menlo promised that it would advise Gainey of any "high value loads." Gainey also contends that Menlo was aware that the Sandston facility, and inkjet cartridges in particular, had been a particular target for theft. Gainey contends that if it had known about this high risk of theft, it would have implemented additional procedures with respect to the security of the HP cargo. (*See, e.g.,* Declaration of Tim Kelly.)

### III.  ANALYSIS

#### A.  Standards Applicable to Motions for Summary Judgment.

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248.

A party who moving for summary judgment who bears the burden of proof at trial must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000). Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine

4

issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### B.  Rule 56(f) Request and Evidentiary Objections.

#### 1.  Rule 56(f) Request.

Gainey requested that the Court deny or continue the hearing on the motion for summary judgment because Menlo has not provided it with documents relating to claims made to and paid by other carriers. Menlo contends that the document requests were propounded after discovery closed. The Court concludes that because Gainey seeks the documents to support its argument regarding Menlo's alleged oral promises, those documents would not preclude this Court from entering summary judgment. Accordingly, the Court HEREBY DENIES Gainey's Rule 56(f) request.

#### 2.  Evidentiary Objections.

Menlo objects to pages 2:2-3 and 2:7-10 of the Supplementary Affidavit of David Ortega on the ground that while Mr. Ortega "reaffirms the veracity" of statements made in particular letters, his statements are contradicted by the facts. Menlo also claims the statements as hearsay, are not based on Mr. Ortega's personal knowledge, and should be barred as parol evidence. Mr. Ortega's affidavit and the letters attached thereto refer to the alleged oral promises made by Menlo. In order to determine whether the Agreement is fully integrated and whether the alleged oral promises contradict that Agreement, the Court can consider the alleged oral promises. *See, e.g., Salyer Grain and Milling Co. v. Henson*, 13 Cal. App. 3d 493, 500-501 (1970). Accordingly, and solely for purposes of resolving this motion, the Court OVERRULES Menlo's objections to Mr. Ortega's supplementary affidavit.

For similar reasons, the Court OVERRULES Menlo's objections to pages 95-97 and 104 of the Deposition of Mitch Parsons and Menlo's objection that all parol evidence should be excluded. To the extent this evidence relates to the alleged oral promise regarding high value loads, the Court has considered it solely for the purpose of determining whether the Agreement was fully integrated and whether the alleged promises contradict that Agreement. *Salyer Grain*, 13 Cal. App. 3d at 500-501.

5

The Court also OVERRULES Menlo's objections to pages 77-78 of Mr. Parsons' deposition. Mr. Parson testified he had personal knowledge of the investigation on thefts at the Sandston facility, but did not recall specific numbers "off the top of his head." The Court also OVERRULES IN PART Menlo's objections to the portions of the Declaration of Tim Kelly addressing actions Menlo would have taken had it known of the high risk of theft at the Sandston facility. The objections raised with respect to pages 3:12-4:15 go to the weight of the testimony and, thus, are OVERRULED. The Court did not consider pages 1:27-2:25 in resolving the motion, and so does not rule on those objections.

To the extent the Court has not addressed Menlo's remaining objections, it is because it did not consider the evidence in question in resolving the motion.

**C.     Menlo Is Not Entitled to Summary Judgment on Its Breach of Contract Claim.**

Menlo's sole cause of action in this case is for breach of contract. Menlo contends that there are no genuine issues of material fact in dispute on its breach of contract claim and also contends that Gainey has no valid affirmative defenses. In order to prevail on this claim, Menlo must establish: (1) a contract; (2) Menlo's performance under the contract or excuse for non-performance; (3) Gainey's breach; and (4) damage to Menlo caused by Gainey's breach. *See Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). The existence of the Agreement is not in dispute.

Gainey asserts that summary judgment is not appropriate because of alleged oral promises Menlo made with respect to the HP Addendum. The Court concludes that, as a matter of law, these alleged oral promises cannot be relied upon to defeat summary judgment or defend against Menlo's claim. However, Gainey also asserts that there are disputed issues of material fact with respect to its position that it is relieved from liability based on the "sole negligence" provision of the HP Addendum. The Court agrees with Gainey on this point.

**1.     As a matter of law, Menlo's alleged oral promises cannot be considered.**

Gainey claims Menlo orally promised that: (1) Menlo would not seek reimbursement from Gainey on claims made that exceeded Gainey's insurance coverage; and (2) Menlo would advise Gainey when high value loads were being shipped. (*See* Gainey Opp. at 22.) In essence, Gainey

6

1 argues that these alleged promises preclude Menlo from establishing the remaining elements of its
2 claim.

3  "[W]here the parties to a contract have set forth the terms of their agreement in a writing which
4 they intend as the final and complete expression of their understanding, it is deemed integrated and
5 may not be contradicted by evidence of any prior agreement or of a contemporaneous oral
6 agreement." *Banco de Brasil, S.A. v. Latian, Inc.*, 234 Cal. App. 3d 973, 1000 (1991); Cal. Code
7 Civ. P. § 1856.  In order to determine whether a court may consider parol evidence, it must ask two
8 questions: "1) was the writing intended to be an integration, *i.e.* a complete and final expression of the
9 parties' agreement, precluding any evidence of collateral agreements; and 2) is the agreement
10 susceptible of the meaning contended for by the party offering the evidence"? *Brinderson-Newberg*
11 *Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 276-77 (9th Cir. 1992) (quoting *Gerdlund*
12 *v. Electronic Dispensers Int'l*, 190 Cal. App. 3d 263, 270 (1987) (citations omitted)).  Thus, if an
13 agreement is integrated, parol evidence will be admissible only to "prove a meaning to which the
14 language of the instrument is reasonably susceptible." *Bert G. Giannelli Dist. Co. v. Beck & Co.*,
15 172 Cal. App. 3d 1020, 1037 n.4 (1985).
16 //
17 //

**a.      The Agreement between Menlo and Gainey is fully integrated.**

Menlo contends the Agreement is fully integrated, while Gainey contends the Agreement is partially integrated and that the alleged oral promises relate to matters that are not integrated. The determination of whether a contract is fully integrated is a question of law. *Banco de Brasil*, 234 Cal. App. 3d at 1000; Cal. Code Civ. P. § 1856(d). To make this determination, the Court may consider whether the written agreement appears complete on its face, whether the alleged oral promise would be the natural subject of a separate agreement or whether it would have been included in the written contract, and the circumstances involving the making of the written agreement. *See, e.g., Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 954 (2003); *Banco de Brasil*, 234 Cal. App. 3d at 1002-1003; *Salyer Grain*, 13 Cal. App. 3d at 500-501.

Here, the Agreement appears to be complete on its face. The Master Agreement contains an integration clause, which expressly states that it "constitutes the entire agreement between the parties, and may be modified only by mutual agreement of the parties as evidenced in writing." (Master Agreement, § 30.) Although the alleged oral promises were made in connection with the HP Addendum, which was signed approximately six years after the parties signed the Master Agreement, the HP Addendum was "made a part of the" Master Agreement. (HP Addendum at 1.) The Court, therefore, reads these two agreements in conjunction with one another. *See, e.g.,* Cal. Civ. Code § 1642 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.")

By its terms, the HP Addendum supersedes and controls only those portions of the Master Agreement with which it conflicts. There is no inherent conflict between the terms of the HP Addendum and the Master Agreement that would lead to the conclusion that the HP Addendum superseded the integration clause. (HP Addendum at 1.) Indeed, the fact that the parties complied with the terms of the Master Agreement by setting forth in writing the modifications covered by the HP Addendum, supports the conclusion that these documents taken together constitute the complete and final expression of the parties' agreement. *See Banco de Brasil*, 234 Cal. App. 3d at 1001.

Further, the Master Agreement and the HP Addendum contain very specific provisions regarding what insurance was required and the limitations on Gainey's liability. As discussed, Gainey was required to maintain occurrence based cargo insurance in the amount of no less than $150,000. The Master Agreement also places liability for loss squarely on Gainey's shoulders, stating that Gainey "shall be liable to Menlo, any involved Shipper, and any involved customer of such Shipper, for the full value of any loss, damage or injury to property occurring while in the possession of [Gainey] or under [Gainey's] care, custody or control, or resulting from [Gainey's] performance or failure to preform the services provided herein ... ." (*Id.*, § 7.)

Similarly, the HP Addendum provided that Gainey would accept full responsibility for loss of HP cargo, subject to certain limitations. (HP Addendum, §§ 5.0.B.i - 5.0.B.iv.) The HP Addendum also contains a separate section outlining the security plan to follow with respect to HP cargo. The Court concludes that these facts support a conclusion that the alleged oral promises (to limit Gainey's liability to its insurance coverage and to advise Gainey about high value loads) are matters that naturally would not have been the subject of separate contracts but, rather, naturally would have been included Master Agreement or the HP Addendum.

Finally, there is no suggestion in the record that the HP Addendum was the product of anything but an arms length transaction or that Menlo and Gainey are anything but sophisticated and experienced business entities, which were represented in the negotiations by persons "who may be presumed to know the effect of written agreements." Indeed, Mr. Ortega, who represented Gainey in the negotiations regarding the HP Addendum is an attorney. (*See, e.g.,* Brook Decl., ¶ 7).[4]

The Court concludes that each of these facts support the conclusion the agreements were fully integrated. *See, e.g., Banco de Brasil*, 234 Cal. App. 3d at 1003-1007 (finding that where parties entering into agreement were represented by counsel, where the agreement contained detailed provisions regarding their liabilities, and where agreement contained an integration clause, agreement was fully integrated); *Salyer Grain*, 13 Cal. App. 3d at 493 (finding agreement to be fully integrated where it contained an integration clause, and where parties were experienced businessmen who negotiated agreement at arm's length).

---

[4] Gainey has not controverted Menlo's proffer on this point.

9

> **b.     The alleged oral promises do not help explain the meaning of the Agreement.**

Having concluded that the Agreement is fully integrated, the Court next asks whether evidence of the alleged oral promises is relevant to establish a meaning to which the language of the Agreement is reasonably susceptible. The Court concludes it is not. "Testimony of intention which is contrary to a contract's express terms ... does not give meaning to the contract; rather it seeks to substitute a different meaning." *Gerdlund*, 190 Cal. App. 3d at 273. In this case, the alleged promise to limit Gainey's liability to the limits of its cargo insurance coverage, which it contends is $100,000,[5] expressly contradicts and varies the provisions of the Master Agreement which required Gainey to obtain and maintain occurrence based cargo coverage "with limits of liability of not less than $150,000 per vehicle and for each occurrence." (Master Agreement, § 5.a.(1).) That alleged oral promise also contradicts and varies the terms of the HP Addendum which set forth the limitations of Gainey's liability for loss or damage to HP cargo. It is true that the HP Addendum does, in certain instances, place caps on Gainey's liability, the minimum cap involved is $500,000. Similarly, the Court concludes that the alleged promise to advise of Gainey of high value loads prior to shipping such loads does not give meaning to any of the terms of the HP Addendum. Rather, the alleged promise would add obligations to that agreement and thereby give it a different meaning. Accordingly, the Court concludes that evidence of the alleged parol promises cannot be considered.

> **c.     The alleged oral promises cannot be used to show promissory fraud.**

Gainey also contends that the oral representations must be considered because Menlo made the representations to induce Gainey to enter into the HP addendum. "Under California law, parol evidence cannot be introduced to show fraud or misrepresentation if the parol evidence contradicts the language of an integrated contract: '[I]f the false promise relates to the matter covered by the main agreement and contradicts or varies the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible.'" *Brinderson-Newberg*, 971 F.2d at 280-281

---

[5] The Court notes that there is conflicting evidence on this point. Gainey contends it "generally" does not provide for cargo insurance coverage in excess of $100,000. (Declaration of Kevin Rynbrandt, Ex. B - Ortega Deposition at 16.) However, Gainey's insurance representative testified it had insurance coverage of up to $1,000,000. (Brook Decl., Ex. E - Deposition of Bruce Tourison at 30:12-25.)

10

(quoting *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 484 (1989), in turn quoting *Bank of America Nat'l Trust & Sav. Ass'n v. Lamb Finance Co.*, 179 Cal. App. 2d 498, 502 (1960)). For the reasons set forth above, the Court concludes that the evidence of the alleged oral promises would contradict and vary the terms of the Agreement.

Thus, to the extent Menlo moves for summary judgment on the basis that the alleged oral promises do not relieve Gainey of liability, its motion is GRANTED IN PART. At trial, Gainey shall not be permitted to argue that Menlo failed to perform under the Agreement by not advising Gainey that it would be carrying a "high value load." Nor shall Gainey be permitted to argue that it did not breach the agreement because the terms of the contract required only that it pay Menlo the limits on its insurance coverage.

### 2. There are genuine issues of material fact in dispute with regard to the "sole negligence" provision of the HP Addendum.

Gainey's remaining line of defense is that it is not liable to Menlo based upon the "sole negligence" clause in the HP Addendum. It asserts that there are genuine issues of material fact in dispute as to whether Menlo was solely negligent in connection with the loss of the HP Cargo. Menlo argues this provision cannot save Gainey because there was no "inchoate" duty to warn Gainey of a high risk of theft to shipments out of the Sandston facility. The Court believes Menlo's focus on its duties to Gainey is too narrow.

The Court finds that it is undisputed that Menlo had a contractual duty to Gainey under the terms of the contract, in that Menlo agreed that Gainey would be relieved of its liability if Menlo was solely negligent for any loss to HP goods. The Court interprets that term of the HP Addendum to mean that Menlo agreed it had a duty to act with reasonable care toward shipments. If Menlo's failure to act with reasonable care was the *sole* cause of loss, Gainey would be relieved of liability. Thus, the Court concludes that Menlo did owe Gainey a duty of care. *See Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999) (whether duty exists is a matter of law for the court).

Although Gainey may indeed face an uphill battle to demonstrate Menlo's alleged negligence was the sole cause of the loss, the Court concludes that on the record before it, there are disputed issues of material fact as to whether Menlo breached that duty and whether any breach of the duty was the *sole* cause of the loss of the HP cargo. *See, e.g., Vasquez v. Residential Investments, Inc.*,

11

118 Cal. App. 4th 269, 278 (2004) (in general the questions of whether defendant breached duty of care and causation are questions of fact for the jury). Accordingly, for this reason, the Court DENIES Menlo's motion on this basis. However, any trial on this matter will be limited to this narrow question.

## V.  CONCLUSION

For the foregoing reasons, Menlo's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. The Court HEREBY ORDERS the parties to appear for a case management conference on Friday, May 20, 2005 at 1:30 p.m. to discuss whether a further settlement conference would be useful and to set pretrial and trial dates.

**IT IS SO ORDERED.**

Dated: May 2, 2005

 /s/ Jeffrey S. White
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

12